May it please the Court, Lee Weiss for the Appellant, George Klein. I realize that the Court has read the briefs and is familiar with the record in this case. And what I would like to do is basically to emphasize just three points. First would be the unresolved issue from the bank's motion to dismiss. The Supreme Court has already taken care of the electronic filing one. But then there's also the jurisdiction issue. The second is just to briefly discuss what our essential point is on the key issue before the case, and that's the propriety of the Judicial League. The third issue that I'd like to address is the sufficiency of the record with respect to the motion for reconsideration. With respect to the jurisdictional issue, I would concede that Supreme Court Rule 304b-4 may not be a perfect fit for this situation. However, in our response to the motion, we noted the case of Poilevi v. Spivak, a First District case, and we think that that might be instructive. In that case, a Wyoming judgment of the amount of approximately $50,000 was registered in Illinois, and apparently supplementary proceedings were initiated because the opinion comments on the failure of the judgment debtor to respond and produce certain documents. And in that respect, it's somewhat similar to the contention of the bank that Mr. Klang was unresponsive and didn't appear for citation examination. In any event, the triggering event which led to the appeal was the imposition of a judicial lien, which was not only in the judgment amount but also included interest and attorney's fees. To be sure, the opinion does not discuss jurisdiction, but I assume that the court noted jurisdiction or had considered jurisdiction before it proceeded. In any event, it indicates to me that the imposition of a judicial lien in a case in this pasture is warranted and is subject to judicial review. Under what Supreme Court rule? That is a question. I actually got the appellant's brief in the Poylovey case. He cited Supreme Court Rule 301. I'm not sure that that's a perfect fit either. And while I understand the requirement of providing the court with a specific basis for jurisdiction, it does seem to me that Poylovey indicates that there is one. I can't stand here and tell you exactly what it is. It wasn't discussed in the case, but it seems to me that the procedural pastures of the two cases are extremely similar. What I'd next like to do is just briefly discuss what our position is. This is a case which deals with the imposition of a judicial lien on distributions from a spent-thrift trust. It seems to me that properly, given the rules controlling a spent-thrift trust, the trigger for the imposition of a lien isn't the distribution. It's the receipt. It's the receipt by the beneficiary. And his ability to do something with the money, because the distribution or, well... Would this case be different if there was an order entered by the trial court ordering your client to inform the trial court when he received a distribution from the trust? I think that that would be the... I think that would be different. In fact, that would bring it more in line with what Pavenik was trying to get at, where actually they required the judgment debtor from the mechanics lien case to give notice because the lien didn't spread of record. And that's exactly what we think should have happened here. What's the difference? I mean, isn't it a distinction without a difference? I mean, again, this is almost like a metaphysical concept of what does it mean to distribute money from a trust. You know, it's in the trust. Then they write a check, and it's going somewhere. You're saying your client has to get the check? Yeah, well... Then it can be attached? Yeah, because the distribution isn't made until the beneficiary does something with the check. But it's... I'm sorry. But it's no longer a part of the trust if it's been distributed. So if it's set, if it's distributed, it might be in midair between the trust and your client. It's no longer... Somebody would not be invading the trust because it's no longer part of the trust, correct? Well, I mean, until the beneficiary does something with the check, the trust could always, you know, cancel the instrument, stop payment at it. Well, forget a check, though. What if it's just a direct transfer from one account to another of funds? It still seems to me that under the case law, and especially under the Knight case that we've cited, and actually both sides have cited, that Knight v. Gregory, you know, which speaks to the... which speaks precisely to that point. And, in fact, in both our reply brief and our briefing sheet, we pointed to the key language that, while it may be a hardship to force creditors to pursue trust assets after distribution, especially when the beneficiary has the right to assign them, nonetheless a creditor is presumed to know that the trust device affords the assets installation from involuntary seizure. We think that that's... Yeah, I agree it's a narrow point, but I also think that it's a significant one and that the lien as drafted or the lien order as drafted violates Illinois law. Wouldn't it be easy, though, then, for a creditor or a debtor to avoid paying the creditor by playing fast and loose with the interpretation of what is in the hands of the debtor or a distribution, so to speak? Well, there are two things around it. First of all, that presumes a dishonest motive or dishonest action on the part of the debtor beneficiary. It not only presumes it, it encourages it, if we would interpret it the way you're speaking. Well, I think that if you read Pedetic together with Knight, if there's notice of a distribution having been made, it seems to me that your issue may be cleared up. But doesn't Knight basically say that you cannot impose a lien against funds that are in the trust? Right, and so the question is, what does it mean to be in the trust? And our position is that they're in the trust until they're actually received and disposable by the debtor. So once somebody pushes the button that says send, and those funds are electronically transmitted to the other accountants. Sure, I think that they might, yeah, that would be the case. That's a distribution. Right, right. We've also, I mean, just briefly, Pedetic may have some utility on the notice issue, but since it's not a 2-1403 case, we think that it's distinguishable. Similarly, in Sharpe, that's procedurally distinguishable since it arose in the context of a contempt of court action and also basically dealt with a husband who would rather spend money on his porch than on his children in violation of a child support order. And so that deals to the extent that it does implicate 2-1403 on a portion of statute that has no relevance to this case. Well, didn't Sharpe actually say that the fact that there's child support involved, the part of 1403 involving child support has nothing to do with Sharpe? Because that was talking about attaching funds for future withholding, whereas this was talking about going after distributions that had been made already from Sharpe. Well, the distributions had already been made, but I think that that's the point, that they'd already been in his hand. The money comes to him. Now it's income that may be subject to the court order. But I think that what this thing does is grabs the money before it would hit the debtor's hands. But if there was no money ever distributed, there'd be no money ever given to the creditor. Right, right, exactly. So it has to be distributed, then it can go to the creditor. It has to be distributed, received, and deposited, or if it's a check, or in the instance of a direct deposit. Now, there's no record here of how the money is distributed by this trust. Well, so the Hawley case talks about, I don't know if you're familiar with the Hawley case or the McCoy case, which talks about the rationale behind the spendthrift is that it prevents creditors from reaching the trust assets. Correct? Yes. Assets that the beneficiary cannot reach. Right. So if the beneficiary can't reach the assets, then the creditor can't reach the assets. Right. If assets are distributed, that means they are able to be reached by the beneficiary, correct? Whether the beneficiary exercises that distribution or does not, they're accessible to the beneficiary, whether they're in his hands, whether they're on the way to the bank or on the way to his hands, or whether he says to the trustee, hold on to them, I'll get them, they're accessible to the beneficiary. Correct? You know my next question. Then, therefore, they're accessible by the creditor. Yeah. I mean, yeah, I understand that. But, you know, I'm just backing up to the Knight v. Gregory comments with respect to the hardship that may be forced on creditors with respect to spendthrift distributions from spendthrift trusts. So you're saying that Knight stands for the proposition that the creditor has to wait until the beneficiary actually receives the funds? Exactly, exactly. But if you look at the legislative intent to, even though it's not directly on point to 214.03, that would not make a whole lot of sense to say, okay, the beneficiary has an absolute right to those funds. They're no longer a part of the trust. But if he holds on to them or has somebody else hold on to them, he's basically ducking the credit. Well, but here's the thing. If he just holds on to the check, the trustee can always step in. So it's … Yeah, but that's the same with any type of income anybody gets. So your paycheck comes to you and the creditor is standing there waiting with the judgment. And you say, oh, you can't attach it yet because my employer has every right to stop payment on that check. Well, I mean, well, yeah, on the one hand. On the other hand, wages or … It's income. It's income. No matter how you look at it, the distribution from the trust is income to you just like a paycheck is income to you. Well, there are statutes with respect to the payment of salary, the payment of commissions, things like that, which I think may make it a distinguishable situation because distributions from a trust are discretionary. They're not mandatory. Payment of salary, income received from performing a service. We talk about distribution because that's what's in the order and that's what's in the knife case and all that. But the real issue here is the statute that talks about money held in trust. Right. And when the money leaves the trust, are you saying it's held in trust until your client gets it and cashes the check? Right. So it's still held in trust then? Yes. Even though it's out of the trust? Again, it's a metaphysical concept. If we're talking about money going through a wire, there's no money actually going through the wire, so … It's a narrow point. I'll concede that here. But doesn't the court's order in this case protect everybody? It protects your client because they can't attach what money is in the trust until it's distributed, but it also protects the creditor because then once the money is out of the trust, the creditor can get the money that's rightly due from a judgment? Well, yeah, but it seems to me that, well, consistent with how we read the statute in the case law, Padvetnik hints at how this should work, and that is the payee, whether it was the judgment debtor in Padvetnik or the trustee here, gives notice when distributions are being made, when he's sending out the check, when he's wiring the money. And that would also protect the creditor. That would protect the bank. Thank you, Mr. Weiss. Your time is up. You will have time for rebuttal. Okay. Thank you, Judge. Mr. Black, you may proceed. Good morning, Your Honors. I'm going to guess you're going to say no Supreme Court rule applies to this jurisdiction. May it please the Court, I'm Robert G. Black, for any of that. On the jurisdiction issue, we did raise that aspect of how does Rule 304B3 apply here when there is not a finality under 214.02, and instead there's proceedings under 214.03. I do have to note that our motion in terms of dismissing the appeal for lack of jurisdiction was denied earlier on. So, quite frankly, I was not presuming that we were going to be discussing that, but I'd be happy to discuss it otherwise. We did raise the point at that instance that Rule 304B3 is clear. 214.02 proceedings, final order of 214.02 proceedings, we've cited Rule 277, we've cited 214.02, that this was not a final proceeding pursuant to how that is envisioned within Rule 304B3 to allow for interlocutory review. Be that as it may, we believe, and the Court has alluded to this, that it's very important to note the bank did not request, nor did the trial court order, any attachment of funds while within the trust in order to satisfy the bank's judgment. The defendant appellant decline kind of raises a major premise and a corollary premise stringing from that. Major premise is a spendthrift trust. A corollary premise is there's some sort of blanket exemption under 214.03. When they were held in the trust, now I'm hearing today, it's when they are, it's until they are actually in the hands of the debtor. In terms of the spendthrift trust, I do, would like to point out for the Court, the brief doesn't allude to anything in the record that shows this is a spendthrift trust or how it's a spendthrift trust, but there's language in the trust, we believe, that goes that way, and it's at page C390. It's the Living Trust, Article 15, Section 3, talks about to the fullest extent permitted, the interest of the beneficiary's in-trust properties should not be alienated, encumbered, et cetera, unless specifically authorized. But then it goes on to say, and I do want to quote this because I think it's significant, such interests, while they remain trust property, shall not be subject to legal process as to the claims of any creditors. So, okay, that sounds like a spendthrift trust. It meets the sniff test. But it also is very consistent here about while they remain trust property. And if you look at Section 2-1403 from there, 21403, as the panel has already discussed, has the language in there that its property is exempt if held in trust. Okay? So this spendthrift trust language, the statutory language, and what the trial court ordered are all consistent. They're all consistent. Well, how do you distinguish the case that the counsel relies on, Knight? I don't believe there's a reason to distinguish Knight. I think Knight is very much on point with what we're talking about here and what the trial court did. As Justice Burke alluded to, the trial court's order here protects everyone. Nobody can do anything as long as that property remains within the trust, and that's consistent with the spendthrift trust terms and that's consistent with the statute. What Knight talks about is, yes, you can't attach it, even though it may be a hardship, until, and you can't pursue the trust assets until after distribution. And this is what the trial court ordered. My question, then, is what's distribution? There's been a discussion here about distribution versus receipt. I think the Supreme Court in the Podvinnik case, if I'm pronouncing that correctly, in terms of setting up the judicial lien, deals with that aspect. In that case, we had a similar type of circumstance where judgment is obtained against judgment debtor. Judgment debtor has a case in another county, Cook County. There is a lien created by service of citation of assets in the primary action, and the court there ordered a judicial lien for the protection of everyone so that when proceeds came out of that litigation, they could be attached. Now, what happened there is the court gave notice, and what happened there was there was a settlement, and settlement proceeds were given, but they were not turned over to the person holding the judicial lien. And the Supreme Court said, well, this is, again, for your protection here. The party who paid it in settlement had notice, so you can go after them to attach those funds. So I think the Supreme Court has already dealt with this situation, and I think that the distribution versus receipt is, quite frankly, distinction without a difference. This judicial lien, again— Especially in a digital age. Particularly in a digital age. But this judicial lien protects everyone. It protects the individual debtor while the property is still within the spendthrift trust and serving the purpose of a spendthrift trust, and it protects the judgment creditor such that when there is this distribution, the judgment debtor has the ability to attach it pursuant to a valid lien and a valid judgment. Without invading the trust. Without ever invading the trust. The trust is never to be touched. And, again, that's the significant point about what the bank requested by way of its motion for the judicial lien. It's a significant point about what the trial court ordered. The trust corpus, the trust property, is never to be touched. Once things are resolved in Cook County action, be it by way of the litigation, be it by way of the settlement and litigation, be it by way of some other distribution pursuant to the Ruth Klein Living Tariff Trust, then at that point the judicial lien becomes operational and the bank can collect on its judgment to the extent it's able to do so. Do you want to distinguish or enlighten me as to how to distinguish Everhart and the in-way marriage of Everhart and then auto owners insurance versus purchase? Certainly, Your Honor. Both of those cases talked about retirement pension plans under different statutes and different exemptions there. In what those cases talked about, and I think they're consistent on both aspects, and understanding it's not 214.03, but they're consistent in both aspects about if assets remain from coming out of the trust remain traceable and they are for the betterment and benefit of the debtor or the family, the exemption can continue in those limited circumstances regarding pension plans and a retirement plan. Didn't one of those statutes have a specific exemption for distributions? If it did, I'm not recalling directly, Your Honor. I apologize for that. I thought one of them. It could very well be, but the distinction there is, right, we have got a situation where this is still the purpose behind the Spendthrift Trust, and it is traceable. There is no sort of commingling. There's nothing else. If you look at the record here, when Kline was requesting trust assets, he was requesting trust assets for his business, and that's at C-265 of the record, within his motion, talking about when he wanted a distribution, because he said, I need it for my business because my business has had a downturn due to the economy in general, and my real estate development business in particular does not fit within Eberhardt, does not fit within our owner's insurance. Assuming that there is a consistency between those statutory schemes and what Section 2-1403 is designed to do, and it's considering that you're dealing with pension plans, retirement plans, vis-a-vis what we've got here in a Spendthrift Trust. So I think those cases are, in that respect, directly distinguishable. There's nothing of record here to show that these funds were going to be kept aside here. There's nothing even suggested of record, and certainly they could have suggested it at some point in the trial court, if that's what they were going to talk about, but the record is different. The record in terms of their motion for a distribution in the Cook County case. My take on Counselor Kline's argument, or Kline's argument, I should say, is the words, a hardship to force creditors to pursue the assets after distribution, intimates that it would be harder for you than this. This wasn't hard enough. The money should go to the person, and then you should have to run after that person. That would be the difficulty involved that they're talking about. I don't take it, the reading that way, Your Honor. I take the reading as, if you're looking at the language there, that it talks about how the creditor, extended credit, did whatever they did, knowing that there was these monies in this trust. So it did so with full knowledge that if there was a default, they couldn't get at it. They'd have to wait. And while it may be a hardship to do so, they made the loan, made the extended credit, whatever it was, with full knowledge of that aspect of the trust. So I view that entirely differently. And I do want to allude here to our citation to intermarriage of Sharpen, understanding that it was a child support case, and that there's additional provisions within Section 2-1403 with regard to past due child support. But I think the significant point of Sharpen is it looks at 214.03 independently, and it looks at the purpose behind the spend for trust independently, that purpose being to restrict the beneficiary's ability to alienate funds and also restrict the beneficiary's creditor's ability to attach funds. And it says it would strain both law and logic to continue to enforce the spend for trust after the funds are out of the trust. So we believe that the Sharp case also falls directly on point with what the trial court did here, what the trial court ordered here. And there is no real distinction in terms of what happens here after the distribution. Once they come out of the trust, that's when a judicial lien is activated. Once they become a legal property, if you will, of the debtor or the beneficiary or whatever you want to call them. Not to split hairs, Your Honor. Once they come out of the trust, if they're supposed to go to him, what else are they but his property? Exactly. I don't know. There's not this cloud someplace that it doesn't have some sort of characterization. Once it comes out of here, it's got to be that. However that route takes, it has to be that. What do you say to your opponent when he says, yeah, but the trustee may take them back or may cancel the check? Well, then we go back in the court and say, okay, this is what happened. I don't know how else. Because my reading of what the judicial lien is all about, it doesn't make any sense to do this extra step of, okay, now we have the lien, but now we have to wait until the check clears or the trustee doesn't change his mind three weeks later or whatever. Your position would be that as soon as the check is in his hands, if it is a check and not a wire, not an electronic transfer? My position is consistent with the statute and consistent with the trust language. If it's within the trust, it's exempt. And as soon as the check is written, assuming it's a paper check, it's? As soon as he has access to it. Yes. If it's out of the trust, it's in his access. It's accessible by him by definition. Yes. Unless there's anything else, we would request that upon consideration of the case, that the judicial lien order and judgment of the circuit court be affirmed, assuming there is jurisdiction. Thank you, Mr. Poehler. Thank you, Your Honor. Mr. Weiss, should we proceed? Just briefly, Your Honor. And I think that the two arguments have shown both sides of the coin. And, you know, much of my rebuttal, you know, given my disposition to argue, would just be hammering a nail that's already been driven into the wood. But just to reemphasize, to the extent that it has relevance, it would be the duty on the person making the distribution to give notice that it's coming out. And not just the lien before it arrives in the hands of the debtor. And he does something with the money. Let me ask you this question. Sure. If the debtor or beneficiary has a right to access money, there's going to be a distribution to all the beneficiaries, say, for instance. And the debtor slash beneficiary says, you know what, I don't want to take these funds. Just leave them there. I don't need a distribution. Are we talking about something different then? I mean, in your position, it would probably be the same. Sure. But I'm saying I probably should have asked Mr. Black this question. Yeah, exactly. Because, I mean, he's talking about he attached a motion that was filed in the trust litigation that was pending in Cook County in which my client was asking for, I think, $106,000 for business purposes. But, for example, if subsequently he found other sums or he didn't need it, and the $106,000 is going to the other people, why would the creditor be entitled to that money? Well, he would have access to it, technically. Yeah, but he doesn't want it. But it wasn't distributed. Right, exactly. Yes. We don't have that situation here, but. Yeah, but that's, and I think that that's an open question with the lean traffic. Interesting. Okay. Well, for the reasons that have been stated in our briefs and also that I made today, we think that the order should be reversed. Thank you. We'd like to thank both attorneys for their arguments today, and the case will be taken under advisement. Take a short recess.